IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| OSCAR RUBEN APAC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. EP-24-CV-129-KC |
| | § | |
| METRO MONEY FINANCIAL, LLC, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day, the Court considered Plaintiff Oscar Ruben Apac's Motion for Default

Judgment and Permanent Injunctive Relief ("Motion"), ECF No. 9. For the reasons set forth

below, the Motion is **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

The following facts are derived from the well-pleaded allegations in the Complaint and

are taken as true for purposes of adjudicating this Motion. *See Wooten v. McDonald Transit*

*Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (citing *Nishimatsu Constr. Co., Ltd. v. Hous.*

*Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Apac, a resident of El Paso County, Texas, is physically disabled. Compl. ¶ 5, ECF No.

1. He has "significant mobility impairments and uses assistive devices for mobility." *Id.* He is

considered disabled by the Social Security Administration, and the State of Texas has issued him

a placard for his vehicle that permits him to park in accessible parking spaces. *Id.* Defendant

Metro Money Financial, LLC ("Metro Money") owns, controls, leases out, and manages the

property on which Mac's Cash Express ("Mac's"), operates. *Id.* ¶ 8. Apac attaches photographs

of the Mac's storefront, which show that it advertises check cashing, money order, notary public,

fax and email transmission, and other financial and administrative services.  *Id.* ¶ 10.

Apac went to Mac's in April 2024.  *Id.* ¶ 11.  He found that the establishment had no van-accessible spaces in its parking lot nor any "handicapped parking signs."  *Id.* ¶ 9.  Apac would like to return to Mac's, but because of the lack of accessible parking, he is afraid of being struck by a vehicle.  *Id.* ¶ 12.  This causes him "depression, discomfort, and emotional stress."  *Id.*

Apac filed a Complaint on April 15, 2024, against Metro Money, alleging that it was violating Title III of the Americans with Disabilities Act ("ADA"), and seeking injunctive and declaratory relief, along with attorney's fees and costs.  *Id.* ¶¶ 16–22.  Metro Money was served on May 8.  *See* Summons Return Executed, ECF No. 5.  It has not answered or otherwise appeared.  Accordingly, the Clerk of the Court entered default against Metro Money on July 8, Clerk's Entry of Default, ECF No. 7, and Apac subsequently filed this Motion for Default Judgment.

## II.    DISCUSSION

### A.    Standard

The clerk of the court shall enter default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  After the clerk enters default, a party may move for a default judgment.  *See* Fed. R. Civ. P. 55(b); *see also N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996).

Courts conduct a three-step analysis to determine whether default judgment should be entered.  *See CoreStates Constr. Servs., Inc. v. Red Beard Excavators, LLC*, No. 1:22-cv-898-RP, 2024 WL 1595696, at *2 (W.D. Tex. Feb. 29, 2024) (citations omitted); *Alvarado Martinez v. Eltman L., P.C.*, 444 F. Supp. 3d 748, 752 (N.D. Tex. 2020) (citing *Lindsey v. Prive Corp.*,

161 F.3d 886, 893 (5th Cir. 1998)).  First, the court determines whether entry of default judgment is procedurally warranted.  *Alvarado*, 444 F. Supp. 3d at 752 (citing *Lindsey*, 161 F.3d at 893).  Second, the court assesses whether judgment is substantively warranted—that is, "whether there is a sufficient basis in the pleadings for judgment."  *Id.* (citing *Nishimatsu*, 515 F.2d at 1206).  In assessing whether the complaint contains a sufficient basis for a default judgment, the court applies the standard governing the sufficiency of a complaint under Federal Rule of Civil Procedure 8.  *See Wooten*, 788 F.3d at 498.  Rule 8 requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  And third, the court decides what relief the plaintiff should receive, if any.  *Alvarado*, 444 F. Supp. 3d at 752 (citing *Ins. Co. of the W. v. H&G Contractors, Inc.*, No. 10-cv-390, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011)).

### B.    Analysis

Apac claims that Metro Money is violating Title III of the ADA because Mac's, situated on property owned by Metro Money, does not offer him or similarly situated individuals ADA-compliant parking.  Compl. ¶¶ 1–2.

"The ADA is a 'broad mandate of 'comprehensive character' and 'sweeping purpose' intended to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American Life."  *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)).  Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

1.       **Apac has standing to bring this suit.**

As a preliminary matter, the Court must determine whether Apac has standing to bring this suit. *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331–32 (5th Cir. 2002) ("Article III constitutional standing . . . must—where necessary—[be considered] *sua sponte*."). Apac argues that he does, because his "day-to-day life has been negatively impacted by [Metro Money's] refusal to bring the [Mac's parking lot] into ADA compliance." Compl. ¶ 26.

Federal courts have jurisdiction only over "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. And for a matter to qualify as a "case" or "controversy," the party bringing the suit must have standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The party invoking jurisdiction bears the burden of establishing standing. *Id.* at 561 (citation omitted). To establish standing, a plaintiff must demonstrate that they have suffered: (1) an "injury in fact"; (2) fairly traceable to the alleged conduct of the defendant; (3) that can likely be redressed by the requested relief. *Id.* at 560–61 (citations omitted). An "injury-in-fact" is an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not 'conjectural' and 'hypothetical.'" *Id.* at 560 (citations omitted). And where a plaintiff seeks prospective injunctive relief, they must additionally show that there is a real and immediate threat of repeated injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Therefore, as the party invoking jurisdiction, and because he is seeking prospective injunctive relief, Apac bears the burden of establishing standing and of demonstrating that there is a real and immediate threat of repeated injury.

Determining standing, and specifically what constitutes an injury-in-fact, in Title III ADA cases has proven controversial. *See Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 5 (2023)

(noting that the circuit split over whether so-called ADA testers have standing is still "very much alive"). Courts in this Circuit have held that a plaintiff bringing a Title III claim may establish standing in two ways. *See X.D. ex rel. De Leon v. Totally Kids Learning Ctr.*, No. 24-cv-51, 2024 WL 4093215, at *3 (S.D. Tex. Aug. 12, 2024) (citations omitted), *adopted sub nom. X.D. ex rel. De Leon v. Totally Kidz Learning Ctr.*, 2024 WL 4068763 (Sept. 5, 2024); *Garcia v. MVB Real Est. Inv., LLC*, No. 23-cv-2955, 2024 WL 406777, at *2 (S.D. Tex. Feb. 2, 2024). First, the plaintiff can show that they intend to return to the noncompliant public accommodation and that they thus face the "real and immediate threat" of repeated injury. *X.D.*, 2024 WL 4093215, at *4. Second, the plaintiff can show that they would return but for the accommodation's noncompliance, and that they are continually injured by being deterred from returning. *Id.*; *see also Cummings v. Premier Rehab, P.L.L.C.*, No. 18-cv-649, 2019 WL 227411, at *3 (N.D. Tex. Jan. 16, 2019).

This latter theory is predicated on the ADA's dictate that a plaintiff does not need to "engage in a futile gesture" if they know that the defendant's business does not intend to comply with the ADA's provisions. *Hunter v. Branch Banking & Tr. Co.*, No. 12-cv-2437, 2013 WL 4052411, at *3 (N.D. Tex. Aug. 12, 2013) (citing 42 U.S.C. § 12188(a)(1)); *see also Frame*, 657 F.3d at 236 ("[A] disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that [the ADA violation] affects his activities in some concrete way."); *Chapman v. Pier 1 Imports*, 631 F.3d 939, 950 (9th Cir. 2011) ("[A] plaintiff who is deterred from patronizing a store suffers the ongoing 'actual injury' of lack of access to the store." (citing *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002)).

Apac appears to plead an injury-in-fact based on a conflation of the two theories, alleging both that he intends to return to Mac's and that he is continually deterred from doing so. Compl.

¶¶ 27–28.  Regardless, courts consider the same four factors under both theories to determine if a plaintiff has standing: "(1) the proximity of the defendant's business to the plaintiff's residence, (2) the plaintiff's past patronage of the defendant's business, (3) the definitiveness of the plaintiff's plan to return, and (4) the plaintiff's frequency of travel near the defendant."  *Hunter*, 2013 WL 4052411, at *2 (citations omitted).

### a.    Proximity

First, as to proximity, Apac does not plead his exact address.  *See generally* Compl.  But he pleads that he lives in El Paso County and that Mac's is situated at 9028 Alameda Avenue, El Paso, Texas 79907.  *Id.* ¶¶ 5–6, 24.  He also describes Mac's as a "local" shop.  *Id.* ¶ 28.

The "proximity" factor favors a finding of standing when the plaintiff lives within fifty miles of the defendant's property.  *See, e.g.*, *Crider v. Foust*, No. 22-cv-2415, 2023 WL 3170496, at *5 (N.D. Tex. May 1, 2023) (citation omitted); *White v. Friendswood Cap. Corp.*, No. 20-cv-496, 2020 WL 6150990, at *3 (S.D. Tex. Oct. 20, 2020); *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 592–94 (S.D. Tex. 2014).  By the same token, "plaintiffs who reside more than [fifty] miles from the defendant's property have generally lacked standing to bring suit."  *Crider*, 2023 WL 3170496, at *5 (citing *Davis v. Am Nat'l Bank of Tex.*, No. 12-cv-382, 2012 WL 7801700, at *6 (E.D. Tex. Dec. 11, 2012), *adopted*, 2013 WL 1195695 (Mar. 22, 2013)).

Because Apac does not provide his address, the Court cannot calculate the exact distance between his home and Mac's.  But the Court takes judicial notice that there is no point in El Paso County, Texas, that is further than fifty miles away from Mac's.  *See, e.g.*, *Sunday v. Belleair Vill., Ltd.*, No. 20-cv-78, 2020 WL 5747108, at *3 (M.D. Fla. Sept. 25, 2020) (proximity factor weighed in plaintiff's favor where the court took judicial notice that there was "roughly fifty

miles" between the northernmost and southernmost tip of the relevant county). This factor thus weighs in favor of finding standing.

     **b.**  **Past Patronage**

   Apac states only that he went to Mac's in April 2024. Compl. ¶ 11. There is some authority to support a finding that this weighs against standing. *See, e.g.*, *White*, 2020 WL 6150990, at *3 (factor two weighed against plaintiff where he only visited property once).

   But following *White* and other similar decisions in this instance would be contrary to the principle that an ADA plaintiff need not engage in futile gestures. If, as he pleads, Apac is concerned that Mac's non-compliance "create[s] the likelihood" that he will be struck by a vehicle, Compl. ¶ 27, it would have been futile and dangerous for him to return after his first visit. And Apac is not required to subject himself to unnecessary risk before bringing a claim. *See, e.g.*, *Frame*, 657 F.3d at 236; *see also Gilkerson*, 1 F. Supp. 3d at 583 ("[P]laintiffs need not engage in the 'futile gesture' of returning to a building with known barriers that the owner does not intend to remedy." (citation omitted)); *Hunter*, 2013 WL 4052411, at *4 ("[Plaintiff] need not engage in the futile gesture of attempting to use an ATM that she knows is inaccessible."). This factor is therefore neutral.

     **c.**  **Definitiveness of Plan to Return**

Apac alleges that he intends to return to Mac's because he prefers to "shop locally to save money and provide for the well-being of his family," but he does not specify when exactly he plans to return. Compl. ¶ 28. Generally, mere "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury" required. *Lujan*, 504 U.S. at 564. But this general standard is not entirely applicable here.

First, requiring a definite plan to return is incongruous with the ADA's deterrence-theory of standing, which is premised on the idea that a plaintiff need not return until remedial measures have been taken. *See Hunter*, 2013 WL 4052411, at *3 (citing *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1075 (7th Cir. 2013)). As noted above, any formulation of standing that would require a plaintiff in Title III ADA cases to return to non-accessible properties before remedial measures are taken would require a plaintiff to engage in futile and potentially dangerous actions.

Second, "what constitutes a sufficiently concrete plan to return must be evaluated in context." *Id.* at *4. For example, in *Lujan*, the paradigmatic standing case, the plaintiffs alleged that they had standing to challenge regulations that could harm endangered species in Egypt and Sri Lanka, in areas of the countries that they had previously visited. 504 U.S. at 563–64. The *Lujan* plaintiffs alleged that they intended to return to the two countries but confessed that they had "no current plans" to do so. *Id.* at 564. Because United States residents generally do not go halfway around the world to Sri Lanka or Egypt without a definite plan to do so, the bar for proving intent to return was justifiably high. *See Hunter*, 2013 WL 4052411, at *4 ("[W]here the allegedly infringing site is many miles away or requires reservations, it is reasonable to require more than a statement that the plaintiff plans to return in the future." (citing *Davis v. Am*

*Nat'l Bank of Tex.*, 2012 WL 7801700, at \*6 (E.D. Tex. Dec. 11, 2012), *adopted*, 2013 WL 1195695 (Mar. 22, 2013)).

By contrast, visiting a local store does not require much forethought and is more likely to be the product of impulse than advanced planning. *See id.*; *see also Crider*, 2023 WL 3170496, at \*5 ("For example, '[v]isiting a fast food restaurant . . . is not the sort of event that requires advance planning or the need for a reservation. . . . [S]pecification as to a date and time of returning to this public accommodation is impossible due to the nature of the event.'" (alterations and second omission in original) (citation omitted)). The Court thus finds that Apac's claim that he intends to return to Mac's suffices under the lenient Rule 8 pleading standards and favors a finding of standing. *See, e.g.*, *Crider*, 2023 WL 3170496, at \*6 (plaintiff's allegation that he intended to return to defendant's convenience store in the future supported a finding of standing despite plaintiff not "pinpoint[ing] a specific date on which his next visit will occur").

### d.    Frequency of Nearby Travel

Apac does not plead that he "frequently" travels near Mac's. *See generally* Compl. But, as noted in the "proximity" analysis, Apac pleads that he lives relatively close to Mac's, so it is not unreasonable to assume that he regularly travels nearby. The Court thus finds that this factor narrowly favors standing. *See, e.g.*, *Tatum v. Bd. of Supervisors for Univ. of La. Sys.*, 9 F. Supp. 3d 652, 657 n.16 (E.D. La. 2014) (to the extent that the "frequency of nearby travel" factor was considered, it weighed in favor of standing because plaintiff and defendant's accommodation were "located in the same parish").

Balancing the factors, the Court finds that Apac, by demonstrating proximity to Mac's and an intent to return, coupled with the lack of any countervailing evidence, has adequately pleaded standing. *See, e.g.*, *Hunter*, 2013 WL 4052411, at \*6 (plaintiff had standing despite only

9

visiting accommodation once and not alleging the specific date she planned to return, because she lived nearby and alleged that she eventually planned to return); *see also, e.g.*, *Gilkerson*, 1 F. Supp. 3d at 596 (plaintiff established standing under deterrence-theory); *Kramer v. Lakehills S., LP*, No. 1:13-cv-591-LY, 2014 WL 51153, at *5 (W.D. Tex. Jan. 7, 2014) (same).

### 2.    Default Judgment is procedurally warranted.

Six factors are relevant to determining whether default judgment is procedurally warranted: (1) whether a material issue of fact exists; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of default judgment to the defendant; (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Lindsey*, 161 F.3d at 893.

All six factors favor default judgment here.  First, Metro Money did not file any responsive pleading, so no material facts are in dispute.  Second, Apac has been substantially prejudiced:  Metro Money has been nonresponsive for nine months and its continued silence could indefinitely pause the adversarial process.  *See id*.  Third, the grounds for default are clearly established because Metro Money has been entirely nonresponsive.  *See Holladay v. OTA Training, LLC*, No. 14-cv-519, 2015 WL 5916440, at *4 (N.D. Tex. Oct. 8, 2015).  Fourth, nothing in the record suggests good faith mistake or excusable neglect.  Fifth, default judgment would not be unduly harsh because Apac seeks only the relief he is legally entitled to.  *See Wilmington Sav. Fund Soc'y, FSB as Tr. of Aero Mortg. Loan Tr. 2017-1 v. Salyer*, No. 1:19-cv-942-RP, 2020 WL 2110820, at *2 (W.D. Tex. May 4, 2020).  Finally, nothing indicates that there would be cause to set aside default if Metro Money moved to do so.[1]  Therefore, default

---

[1] However, this is not to predetermine any such request.  Metro Money may file a motion to set aside default and vacate default judgment, and the Court will consider it in the ordinary course.

judgment is procedurally warranted.

  **3.**  **Apac's pleadings provide a sufficient basis for default judgment against Metro Money.**

  To assert a viable claim under Title III, a plaintiff must establish that: (1) they have a disability; (2) the place that the defendant owns, leases, or operates is a place of public accommodation; and (3) they were discriminated against—i.e., they were denied the full and equal enjoyment of the accommodation because of their disability. *See Deutsh v. Wehbe*, No. 1:15-cv-702-RP, 2015 WL 6830920, at *1 (W.D. Tex. Nov. 6, 2015) (citing 42 U.S.C. § 12182(a)).

  First, Apac pleads that he is disabled because he has mobility impairments that require the use of assistive devices. Compl. ¶ 5. Courts have found similar pleadings sufficient at the default judgment stage. *See, e.g.*, *Hale v. Eselin*, No. 24-cv-44, 2024 WL 3733397, at *2 (S.D. Miss. Aug. 8, 2024) (plaintiff satisfied this element by alleging that he was disabled "as defined by the ADA" and used a wheelchair); *Hanks v. Olivarez*, No. 18-cv-2435, 2019 WL 13472193, at *5 (N.D. Tex. May 24, 2019) (same). And here, Apac adds that his disability has been "established by the federal government and the Social Security Administration," and that he was given a "disabled placard" for his vehicle "issued by the State of Texas." Compl. ¶ 5. Apac has therefore adequately alleged that he has a disability.

  Second, he alleges that Metro Money "owns, manages, controls, and leases the improvements and buildings where [Mac's] business is situated," and that Mac's "is a place of public accommodation." *Id.* ¶ 6. "[S]ervice establishments"—including, but not limited to, banks and accountants—are considered places of public accommodation under Title III of the ADA. 42 U.S.C. § 12181(7)(F). While Apac does not explicitly plead the specific services Mac's Cash Express offers, he describes it as a "business," Compl. ¶ 2, states that it provides

"services," *id.* ¶ 20, and includes pictures showing that it advertises check-cashing and other financial and administrative services, *id.* ¶ 10.  These allegations suffice to meet Apac's burden at this stage.  *See, e.g., Deutsch*, 2015 WL 6830920, at *2 (plaintiff's allegation that defendant owned a vape shop, and that the vape shop was a place of public accommodation, sufficed in motion for default judgment).

Third, Apac claims that he was discriminated against because Mac's parking lot did not have any ADA-compliant parking spots or handicapped parking signs.  Compl. ¶ 9.  Title III includes a list of specific prohibitions, the violations of which constitute discrimination.  42 U.S.C. § 12182(b)(2); *see A.L. ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1290 (11th Cir. 2018); *Brown v. McLane Children's Scott & White Hosp. & Clinic*, No. 6:19-cv-45-ADA, 2019 WL 13253791, at *6 (W.D. Tex. May 8, 2019).  Apac alleges that Metro Money violated three of these prohibitions.  *See* Compl. ¶ 17.  Specifically, he claims that Metro Money violated (1) 42 U.S.C. § 12182(b)(2)(A)(ii), which prohibits discriminatory policies, practices, or procedures; (2) *id.* § 12183(a)(2), requiring that any alteration to a facility be made in a manner so that it is accessible to disabled individuals; and (3) *id.* § 12182(b)(2)(A)(iv), requiring the removal of architectural barriers where such removal is readily achievable.  Compl. ¶ 17.

### a.    42 U.S.C. § 12182(b)(2)(A)(ii) Violation

First, Apac alleges that, through its Mac's parking lot, Metro Money is violating 42 U.S.C. § 12182(b)(2)(A)(ii), which requires "reasonable modifications in policies, practices, or procedures when such modifications" are necessary to accommodate disabled individuals. Compl. ¶ 17(a).  Apac does not specify what "policy, practice, or procedure" he is referring to, but it is presumably the practice of not having accessible parking.  Apac also does not allege whether this is Metro Money's general practice, or just at its Mac's establishment.  *See generally*

12

Compl.

The scope of "policies, practices, or procedures," as used in this provision, is a matter of some debate. *See, e.g.*, *Karczewski v. DCH Mission Valley, LLC*, 862 F.3d 1006, 1019–22 (9th Cir. 2017) (Bybee, J. acquiescing dubitante). But the Court has not found a case in this Circuit holding that inaccessible parking constitutes a discriminatory policy, practice, or procedure. And several courts have explicitly held that it does not. For example, in *MacClymonds v. IMI Investments, Inc.*, the plaintiff alleged that an insufficient number of accessible parking spaces at the defendant's establishment constituted discriminatory policies, practices, and procedures, as well as architectural barriers. No. 5-cv-2595, 2007 WL 1306803, at *1 (S.D. Tex. Apr. 5, 2007). But the court held that the plaintiff had not "identif[ied] any offending policy, practice, or procedure" and instead "complain[ed] [only] of specific features of [d]efendants' restaurants that he claims are architectural barriers." *Id.* at *3; *see also MacClymonds v. Hansen*, No. 6-cv-2476, 2007 WL 9761655, at *11 (S.D. Tex. Aug. 6, 2007) ("Simply using the word 'policy' . . . does not create a claim distinct from [plaintiff's] architectural barrier claims."). Similarly, in *Betancourt v. Ingram Park Mall, L.P.*, the plaintiff alleged several deficiencies in the defendant's parking accommodations, and while the court found that the plaintiff had stated a viable claim regarding architectural barriers, it held that the plaintiff had "fail[ed] to state a claim with regard to an alleged failure to make reasonable modifications in policies, practices, or procedures . . . ." 735 F. Supp. 2d 587, 592, 606 (W.D. Tex. 2010).

And while some courts outside of the Fifth Circuit have found allegations of inaccessible parking sufficient to bring a 42 U.S.C. § 12182(b)(2)(A)(iv) claim, they have been restricted to cases involving a uniform practice common to all of a defendant's many establishments. *See, e.g., Hernandez v. Autozone, Inc.*, 323 F.R.D. 496, 501 (E.D.N.Y. 2018); *Brodie v. Speedway*

*LLC*, No. 17-cv-133, 2017 WL 1957302, at *4 (W.D. Pa. Apr. 7, 2017), *adopted*, 2017 WL 1957059 (May 10, 2017); *see also Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1191 (N.D. Cal. 2023) (declining to certify class because plaintiffs "failed to identify a *common* offending policy or *centralized* decision-making responsible for common accessibility barriers" (emphases added)).

There may be some instances in which an act of discrimination—even, in some cases, a deficiency in accessible parking—could amount to both a discriminatory policy, practice, or procedure, as well as an architectural barrier. *See Karczewski*, 862 F.3d at 1012 ("[W]e fail to see what problems [it] would cause . . . [if] Congress intended a plaintiff to be able to proceed under alternative theories of discrimination"). However, Apac's allegations here are too indefinite and conclusory for the Court to find that the failure to provide an accessible parking space amounts to a discriminatory policy, practice, or procedure. *See, e.g.*, *Hansen*, 2007 WL 9761655, at *11.

### b.    42 U.S.C. § 12183(a)(2) Violation

Second, Apac alleges that Metro Money violated 42 U.S.C. § 12183(a)(2), which requires that any "alteration" of a facility is "readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs." Compl. ¶ 17(c). This provision applies specifically to alterations that took place at least "30 months after July 26, 1990." 42 U.S.C. § 12183(a)(1); *see also Tatum v. Doctor's Assocs., Inc.*, 14-cv-2980, 2016 WL 852458, at *3 (E.D. La. Mar. 4, 2016). But Apac does not explain what alteration Mac's parking lot underwent, if any, much less when the alteration took place. *See generally* Compl. Therefore, Apac has not adequately alleged a violation of 42 U.S.C. § 12183(a)(2), and this claim is also dismissed.

### c.    42 U.S.C. § 12182(b)(2)(A)(iv) Violation

Finally, Apac claims that Metro Money has not removed discriminatory "architectural barriers . . . where such removal [was] readily achievable," in violation of 42 U.S.C. § 12182(b)(2)(A)(iv).  Compl. ¶ 17(b).  The Court must thus determine whether Apac has adequately pleaded that (1) the lack of accessible parking is an "architectural barrier," and (2) removal of these "barriers" is "readily achievable."  *Tatum*, 2016 WL 852458, at *5.

Courts overwhelmingly consider non-accessible parking spots "architectural barriers." *See, e.g.*, *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 456 (4th Cir. 2017); *Kohler v. Bed Bath & Beyond of Cal., LLC*, 780 F.3d 1260, 1262 (9th Cir. 2015)*; Thomas v. 5860 San Felipe, Ltd.*, No. 22-cv-2001, 2024 WL 3378423, at *7 (S.D. Tex. July 11, 2024).

Further, whether a public accommodation has "architectural barriers" is determined "in part, by the ADA Accessibility Guidelines" ("ADAAG").  *Chapman*, 631 F.3d at 945.  The ADAAG are "[p]romulgated by the Attorney General to 'carry out the provisions' of the ADA." *Id.* (citing 42 U.S.C. § 12186(b)).  The guidelines detail the ADA's "structural requirements" and provide "the objective contours of the standard that architectural features must not impede disabled individuals' full and equal enjoyment of accommodations."  *Id.* (citation omitted).  So "if a barrier violating these standards relates to a plaintiff's disability, it . . . constitutes 'discrimination' under the ADA."  *Id.* at 947.  The Department of Justice has published two versions of the ADAAG: one in 1991, 28 C.F.R. Pt. 36, App. D ("1991 Guidelines"), and the other in 2010, *id.* Pt. 36 ("2010 Guidelines").  The Guidelines differ, and their respective application depends on when a facility was built.  28 C.F.R. § 36.406; *McCory v. Royal Ridge Inv., Inc.*, No. 14-cv-1453, 2015 WL 13916266, at *6 n.7 (C.D. Cal. Apr. 20, 2015).  And while facilities that existed before the 1991 Guidelines are not technically required to comply with

15

either standard, the Guidelines still help determine whether a condition at a pre-existing facility constitutes an architectural barrier.  *Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 435 F.Supp.2d 1217, 1226 (N.D. Ga. 2005), *aff'd*, 452 F.3d 1269 (11th Cir. 2006).  Because Apac does not plead when Mac's was built, the Court does not know which version, if either, applies.  *See generally* Compl.  But both standards require accessible parking:  Under the 2010 Guidelines, one in every six parking spaces in a business's parking lot must be van-accessible, 36 C.F.R. Pt. 1191, App. C, § 208.2.4, and under the 1991 Guidelines, one in every eight must be, 28 C.F.R. Pt. 36 App. D § 4.1.2(5)(b).

Apac alleges that Mac's has no accessible parking spaces, whatsoever.  Compl. ¶ 9.  Because this would be a violation under either version of the Guidelines, and in light of the persuasive decisions of other courts, the Court finds Apac has adequately pleaded that Metro Money has discriminatory architectural barriers.

Next, he must allege that removal of the barriers is "readily achievable."  For removal to be "readily achievable," it must be "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).

Even at the default judgment stage, the plaintiff bears the burden of alleging that removal is "readily achievable."  *Van Winkle v. JSCP, LLC*, No. 17-cv-1986, 2018 WL 3756963, at *3 (S.D. Tex. Aug. 8, 2018) (citation omitted); *Burrell v. Twin Goose, LLC*, No. 16-cv-1079, 2017 WL 4230499, at *2 (N.D. Tex. Sept. 25, 2017).  Plaintiffs can meet this burden by alleging "that the requested modification is reasonable in the general sense, that is, reasonable in the run of cases."  *Van Winkle*, 2018 WL 3756963, at *3 (citation omitted).  The court then evaluates the allegations against the factors Congress identified for determining whether the modification is readily achievable.  *See id.* (citing 42 U.S.C. § 12181(9)).  These factors include: (1) the nature

and cost of the action needed; (2) the overall financial resources of the noncompliant facility; (3) the overall financial resources of the covered entity; and (4) the type of operations of the covered entity.  *Id.* § 12181(9)(A)–(D).  But plaintiffs do not need to address each factor in detail.  *Lopez*, 974 F.3d at 1038–39; *see also Bledsoe v. A&Z Pharmacy, LLC*, No. 15-cv-2609, 2017 WL 1315827, at *3–4 (W.D. La. Feb. 10, 2017) (granting default judgment despite being unable to "evaluate [d]efendant's financial condition and resources").

Apac alleges that providing enough ADA-compliant parking spaces in Mac's parking lot is "easily and readily done."  Compl. ¶ 18.  He also provides photographs of the parking lot.  *Id.* ¶ 10.  While Apac does not address the four factors relevant to whether a modification is "readily achievable," the Court, as mentioned above, can, "draw[] on judicial experience and common sense" to determine whether the allegations give rise to entitlement to relief.  *Iqbal*, 556 U.S. at 679.  As common sense suggests, and as other courts have noted, "[i]nstalling an accessible parking space is low cost and easy to do."  *Smith v. Hartmann's Moonshine Shoppe, LLC*, No. 17-cv-4211, 2019 WL 4888996, at *3 (D. Minn. Oct. 3, 2019).  Additionally, the Department of Justice has codified examples of readily achievable steps to remove barriers.  *See* 28 C.F.R. § 36.034(b); *see also Ridola v. Chao*, No. 16-cv-2246, 2018 WL 2287668, at *11 (N.D. Cal. May 18, 2018) (noting that the steps listed in § 36.034(b) are "presumed to be readily achievable").  And included on this list is "[c]reating designated accessible parking spaces."  28 C.F.R. § 36.304(b)(18); *Thomas*, 2024 WL 3378423, at *7 ("The regulations themselves provide '[c]reating designated accessible parking spaces' as an example of a *readily achievable* modification for removing barriers in an existing facility." (alteration in original) (citation omitted)).

Precedent also suggests that creating accessible parking spaces is considered readily

achievable.  For example, in *Ramos v. WGI13 Bus. LLC*, the plaintiff alleged that he was unable to patronize the defendant's establishment because of a "number of barriers," including "a lack of van accessible parking and corresponding van-accessible . . . signage."  No. 5:22-cv-172-DAE, 2023 WL 1099145, at *1–2 (W.D. Tex. Jan. 30, 2023), *adopted*, 2023 WL 11830143 (Feb. 21, 2023).  The *Ramos* court did not engage in a protracted analysis to determine if removing these barriers was "readily achievable," instead concluding that it was because of the "site conditions at the Property" and the "straightforward nature of the modifications."  *Id.* at *2–4 (granting default judgment).  Similarly, in *Bledsoe*, the plaintiffs identified three discriminatory barriers, including the lack of accessible-designated parking spaces, and the court found that removal was readily achievable, despite being unable to evaluate the defendant's financial condition.  2017 WL 1315827, at *3–5; *see also Hanks*, 2019 WL 13472193, at *7.

The Court finds that Apac has thus plausibly alleged that Metro Money is violating 42 U.S.C. § 12182(b)(2)(A)(iv) by failing to provide accessible parking.

### 4.    Apac is entitled to relief.

Finally, Apac requests injunctive and declaratory relief, as well as attorney's fees and costs.  Compl. ¶¶ 19–22.  The only remedy available under Title III of the ADA is injunctive relief.  *See Deutsch*, 2015 WL 6830920, at *2 (citing *Frame*, 575 F.3d at 438 n.5).  A plaintiff may also be entitled to attorney's fees if they are the "prevailing party."  *Id.* (citing 42 U.S.C. § 12205).  To be considered the prevailing party, "the plaintiff must achieve judicially-sanctioned relief."  *Miraglia v. Bd. of Supervisors of La. Museum*, 901 F.3d 565, 576 (5th Cir. 2018) (citation omitted).

#### a.    Permanent Injunction

Aapc seeks an injunction to compel Metro Money "to repave and restripe the [Mac's]

18

parking lot to comply with the ADA."  Compl. ¶ 19.

 The party seeking a permanent injunction must establish that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) in considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

 First, as to irreparable injury, Apac has alleged that "[n]ot having access to [Mac's] . . . negatively impacts" his daily life, and that he is "deterred from accessing Mac's" because it does not have any accessible parking spaces.  Compl. ¶¶ 27–28.  And, as explained above, he has adequately alleged that Mac's lack of accessible parking constitutes an "architectural barrier" under the ADA.  He has thus shown that he has suffered an irreparable injury.  *See, e.g.*, *Hernandez v. Roche*, No. 3:20-cv-263-DCG, 2022 WL 4072963, at *5 (W.D. Tex. Sept. 2, 2022) (plaintiff satisfied "irreparable injury" element because he plausibly alleged that he was discriminated against on the basis of his disability), *aff'd*, No. 22-50927, 2023 WL 2645548 (5th Cir. Mar. 27, 2023).

 Second, as mentioned above, remedies at law are unavailable under Title III.  This factor thus also supports a permanent injunction.  *See id.* at *5.

 Third, Metro Money would suffer little hardship by accommodating Apac.  Creating and designating accessible parking spaces is presumptively "readily achievable," and is "low cost and easy to do."  *Smith*, 2019 WL 4888996, at *3.  Accordingly, courts frequently order defendants, on default judgment, to provide ADA-compliant, van-accessible parking spaces. *See, e.g.*, *Ramos*, 2023 WL 1099145, at *4; *Bledsoe*, 2017 WL 1315827, at *3–4; *Kong v. TMO,*

*Inc.*, No. 15-cv-7777, 2016 WL 11758957, at *4 (C.D. Cal. Feb. 5, 2016). The balance-of-hardship factor thus also favors granting permanent injunctive relief.

Finally, the public interest would not be disserved by a permanent injunction. Indeed, the premise of civil rights law, including Title III, is that eradicating discrimination serves the public good. *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001) ("[S]uccessful civil rights actions vindicate a public interest." (citing *Williams v. Thomas*, 692 F.2d 1032, 1038 (5th Cir. 1982)); *see also Hale*, 2024 WL 3733397, at *4 ("[C]reating accessible facilities not only does not disserve the public—it *benefits* the public.").

The Court therefore finds permanent injunctive relief appropriate.

### b.    Attorney's Fees

As the prevailing party, Apac is entitled to attorney's fees. Apac requests $8,712.50 in attorney's fees—for twenty and one half hours of work, billed at $425 per hour. Mot. ¶ 31; Mot. Ex. 1 ("Tharpe Affidavit"), at 2, ECF No. 9-1.

Courts in the Fifth Circuit use the "lodestar" method to calculate attorney's fees. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) (citation omitted). "A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Id.* The lodestar is presumptively reasonable and should be modified only in exceptional cases. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). The Court must therefore determine (1) an appropriate hourly rate and (2) the number of hours reasonably expended on this matter, and then multiply these together to determine the lodestar.

The Court recently resolved another case involving Apac as the plaintiff, where he brought a nearly identical ADA claim against another El Paso establishment. *See Apac v. MEH*

*Properties, Inc.*, No. 3:24-cv-127-KC, 2024 WL 4647640 (W.D. Tex. Nov. 1, 2024).  Both cases were filed on the same day, *see* Compl.; Compl., ECF No. 1, Cause No. 24-cv-127, and Apac is represented by the same attorney, Richard Bruce Tharpe, who seeks identical attorney's fees— proposing the same hourly rate and reporting the same number of hours worked—in both cases, *see* Mot. ¶ 31; *MEH Properties*, 2024 WL 4647640, at *10.  Given these parallels, the Court finds it appropriate to rely on its prior analysis in determining the reasonable hourly rate and number of hours reasonably expended in this case.

### i.  Appropriate Hourly Rate

Tharpe lists his hourly rate as $425.  Mot. ¶ 31.  To support his claim, he provides an affidavit confirming this amount and claiming that the rate is based upon his thirty-two years of experience.  Tharpe Aff. ¶¶ 7–8.  A reasonable hourly rate is "based on prevailing community standards for attorneys of similar experience in similar cases."  *Shipes v. Trinity Indus.*, 987 F.2d 311, 319 (5th Cir. 1993).  The relevant community is "the community in which the district court sits."  *Tollet v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (citation omitted).

In *MEH Properties*, the Court determined that an hourly rate of $425 was excessively high for discrimination cases or similar matters, even for an attorney with decades of experience, based on prevailing rates in the El Paso legal community.  2024 WL 4647640, at *10 (collecting cases).  Instead, the Court found $300 "to be a reasonable hourly rate for a veteran attorney in a discrimination case and reduce[d] Tharpe's rate accordingly."  *Id.*  Because this is essentially an identical case, the Court concludes again that $300 is a reasonable hourly rate, and thus reduces Tharpe's rate accordingly.

### ii.  Reasonable Number of Hours

Tharpe claims that he worked on this matter for twenty and one half hours.  Mot. ¶ 31; Tharpe Aff. ¶ 7.  He also provides a billing timesheet.  Mot. ¶ 31.

The party seeking reimbursement of attorney's fees bears the burden of establishing the number of hours expended, and the "court should exclude all time that is excessive, duplicative, or inadequately documented." *Watkins*, 7 F.3d at 457 (citations omitted); *see also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995) (courts may reduce or eliminate hours "when the supporting document is too vague or incomplete to permit meaningful review") (collecting cases).

Additionally, clerical work, as opposed to substantive legal work, is not recoverable in an award of attorney's fees, even if the clerical work is performed by an attorney. *West v. Zedric's LLC*, No. 5:19-cv-556-FB, 2019 WL 6522828, at *5 (W.D. Tex. Dec. 3, 2019), *adopted sub nom.*, *ACE W. v. Zedric's LLC*, 2019 WL 12393458 (Dec. 27, 2019). "[C]opying, typing, labeling, faxing, mailing, filing" and like activities are all considered clerical work. *Chacon v. City of Austin*, No. 1:12-cv-226-SS, 2015 WL 4138361, at *7 (W.D. Tex. July 8, 2015) (citing *Dinet v. Hydril Co.*, No. 5-cv-3778, 2006 WL 3904991, at *1 (E.D. La. Nov. 22, 2006)). And travel time is typically compensated at fifty percent of the attorney's rate, absent any documentation showing that legal work was accomplished during the travel time. *Lewallen v. City of Beaumont*, No. 5-cv-733, 2009 WL 2175637, at *10 (E.D. Tex. July 29, 2009) (citing *In re Babcock*, 526 F.3d 824, 827–28 (5th Cir. 2008)), *aff'd*, 394 F. App'x 38 (5th Cir. 2010).

Tharpe divides his hours into four distinct time blocks. Mot. ¶ 31. The first time block includes traveling to the location, visiting the facility, taking photographs, drafting the complaint, attaching the photographs, and accounts for exactly seventeen hours. *Id.* The second time block includes reviewing filings at El Paso County Appraisal District and preparing the summons, and is for half an hour. *Id.* The third includes filing the lawsuit, attaching the summons, and serving the lawsuit and is for one and a one half hours. *Id.* Finally, the fourth includes drafting the

motion for default and the motion for default judgment and is also for one and one half hours. *Id.*

As mentioned, these hours, and their distribution, are identical to those claimed by Tharpe in *MEH Properties*. *See MEH Properties*, 2024 WL 4647640, at *11. This symmetry is not inherently concerning—it is logical that nearly identical cases would entail similar tasks and require a comparable amount of time. In *MEH Properties*, the Court found that a reasonable number of hours, based on Tharpe's billing timesheet, was: three and one half hours of legal work, compensable at $300 an hour; twelve hours of travel, compensable at $150 an hour; and five hours of clerical work, which is not compensable. 2024 WL 4647640, at *12. The Court determines that three and one half of hours of compensable legal work and five hours of noncompensable clerical work are thus reasonable allocations in this case as well.

But the twelve hours of travel requires separate consideration. In *MEH Properties*, the Court allotted twelve hours for Tharpe's travel, after taking judicial notice that Tharpe's office was in Olmito, Texas, approximately a twelve hour drive from El Paso County. *Id.* But, as noted above, the present Complaint and the one in *MEH Properties* were filed on the same day, and Apac alleges that he visited the two defendant-establishments in April 2024. *Id.* at *1; Compl. ¶ 11. Neither Apac, nor Tharpe in his affidavit, specify when Tharpe traveled to El Paso to visit the two establishments, or suggest that he made two separate trips. *See generally* Mot.; Tharpe Aff. And absent any evidence to suggest otherwise, the most reasonable inference is that Tharpe traveled to El Paso once and investigated both establishments during that trip. Therefore, the Court does not award Tharpe any additional compensation for travel time in this case. Accordingly, the Court awards only fees for three and one half hours of legal work at $300 per hour, totaling $1,050 in attorney's fees.

      c.      **Costs**

      Finally, Apac seeks to recover his $405 filing fee.  As the prevailing party in this action, Apac is entitled to recover the costs enumerated in 28 U.S.C. § 1920.  This includes "[f]ees of the clerk and marshal."  *Id.* § 1920(1).  The Court takes judicial notice that Apac paid a $405 filing fee, Filing Fee Received, ECF No. 1, which he may recover from Metro Money.

## III.    CONCLUSION

      Accordingly, Apac's Motion for Default Judgment, ECF No. 9, is **GRANTED** in part and **DENIED** in part.  The Motion is **GRANTED** as to Apac's 42 U.S.C. § 12182(b)(2)(A)(iv) claim.  The Motion is **DENIED** as to Apac's 42 U.S.C. § 12182(b)(2)(A)(ii) claim and 42 U.S.C. § 12183(a)(2) claim.

      **IT IS FURTHER ORDERED** that Metro Money **SHALL COMPLY** with Title III of the Americans with Disabilities Act.  Specifically, Metro Money must take the following actions **on or before July 14, 2025:**

    a.    Ensure that one out of every six parking spaces in the Mac's parking lot is van accessible, pursuant to 36 C.F.R. pt. 1191, App. C, § 208.2.4. [2]

    b.    Ensure that one accessible parking space "be located on the shortest accessible route from parking" to Mac's entrance, pursuant to 36 C.F.R. pt. 1191, App. C, § 208.3.1.

    c.    Ensure that all accessible parking spaces are designated as reserved by a sign showing the symbol of accessibility, pursuant to 36 C.F.R. pt. 1191, App. C, § 216.5.

      **IT IS FURTHER ORDERED** that Mac's **SHALL PAY** Apac a total sum of $1,455.00, comprising:

    a.    $1,050.00 in attorney's fees, pursuant to 42 U.S.C. § 2000a-3(b); and

---

[2] "[T]he 2010 Standards govern any injunction that the Court issues, as all remedial work will be undertaken after March 15, 2012."  *Johnson v. Monterey & Rancho Plaza*, No. 19-cv-5718, 2020 WL 5893319, at *5 (N.D. Cal. Oct. 5, 2020); *see also* 28 C.F.R. § 35.151(c)(5)(ii).

b.  $405.00 in costs of court.

The Clerk shall close the case.

**SO ORDERED.**

SIGNED this 15th day of January, 2025.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE